# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

---

|   |   |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | : |
|   | : |
| Plaintiff, | : |
| v. | : |
|   | : |
| ALL-STAR TRANSPORTATION, LLC, and | : |
| STUDENT TRANSPORTATION OF | : |
| AMERICA, LLC. | : |
|   | : |
| Defendants. | : |

Case No. 3:21-cv-00201-JBA

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

Dated: September 2, 2022

**ARMSTRONG TEASDALE LLP**

*/s/ Jonathan R. Shulan*
Jonathan R. Shulan, Esq., *pro hac vice*
7700 Forsyth Boulevard, Suite 1800
Saint Louis, MO 63105
Tel. (314) 621-5070
Fax. (314) 612-232
jshulan@atllp.com

**GFELLER LAURIE LLP**
Melicent B. Thompson, Esq. (ct19868)
Maggie Wroe Rainaud, Esq. (ct30836)
977 Farmington Ave., Suite 200
West Hartford, CT 06107
Tel. (860) 760-8400
Fax. (860) 760-8401
mthompson@gllawgroup.com
mrainaud@gllawgroup.com

Timothy J. Bergère, Esq., *pro hac vice*
Bianca A. Valcarce, Esq., *pro hac vice*
2005 Market Street, 29th Floor
One Commerce Square,
Philadelphia, PA 19103
Tel. (267) 780-2000
Fax. (215) 780-9070
tbergere@atllp.com
bvalcarce@atllp.com

*ORAL ARGUMENT REQUESTED*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

PROCEDURAL BACKGROUND...........................................................................................2

    1. THE PRE-FILING CONFERENCE...............................................................................2

       (a) AS TO SUBJECT MATTER JURISDICTION.......................................................3

       (b) AS TO PERSONAL JURISDICTION. ...................................................................4

    2. THE JOINT REPORT. ....................................................................................................5

    3. EXCHANGE OF DISCOVERY......................................................................................6

    4. MOTION PRACTICE. ....................................................................................................7

LEGAL STANDARD...............................................................................................................7

ARGUMENT ............................................................................................................................9

    1. CLF is Limited to Jurisdictional Discovery...................................................................9

    2. The Merits of CLF's Claims are Assumed. ..................................................................10

    3. CLF Has Not Met Its Burden to Show the Relevance of the Sought Discovery as to
       CLF's Article III and Associational Standing. ..............................................................12

       (a) CLF's "Frequency and Regularity" Argument is Inapposite to the Subject Matter
           Jurisdiction Inquiry, and Further Lacks Legitimate Support Even In Consideration
           of the Merits.........................................................................................................13

          (i) Defendants are not in possession of information that would reveal the frequency
              or regularity with which CLF's members have experienced or observed idling...14

          (ii) Defendants are not in possession of information that would reveal the
              reasonableness of any fear CLF's members have...................................................16

          (iii) CLF's 'pattern and practice' argument has no basis in the law. ..........................17

       (b) CLF's Requests Are Not Proportional to the Needs of Jurisdictional Discovery, and
           Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence for a
           Jurisdictional Hearing. ..........................................................................................18

          (i) Certain vehicle information is inapposite to standing...........................................18

          (ii) Certain employee information is inapposite to standing......................................21

    4. Jurisdictional Discovery as to Personal Jurisdiction Over STA LLC...............................23

CONCLUSION........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008)..................................................................8

*Ahmed v. Cissna*,
  327 F. Supp. 3d 650 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*,
  792 F. App'x 908 (2d Cir. 2020) ......................................................11

*Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*,
  No. 3:17-CV-00817 (CSH), 2018 WL 4039326 (D. Conn. Aug. 23, 2018)..........................16

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003)................................................................8

*Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*,
  448 F.3d 138 (2d Cir. 2006)..............................................................12

*Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1*,
  16 F. Supp. 3d 294 (S.D.N.Y. 2014)....................................................16

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005)................................................................9

*Daventree Ltd. v. Republic of Azerbaijan*,
  349 F.Supp.2d 736 (S.D.N.Y. 2004)....................................................8

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  968 F.3d 357 (5th Cir. 2020) ........................................................15, 20

*Fac. v. New York Univ.*,
  11 F.4th 68 (2d Cir. 2021), *cert. denied sub nom. Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 142 S. Ct. 2813 (2022).........13, 14, 17, 18

*Filus v. Lot Polish Airlines*,
  907 F.2d 1328 (2d Cir. 1990)............................................................10

*Friedman v. SThree PLC.*,
  No. 3:14-CV-0378 (AWT), 2015 WL 13628133 (D. Conn. July 1, 2015) ..............................7

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) ............................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................14

*Friends of the Earth v. Consolidated Rail Corp.*,
    768 F.2d 57 (2d Cir. 1985)................................................................15

*Gonzalez v. Option One Mortg. Corp.*,
    No. 3:12–CV–1470, 2014 WL 2475893 (D. Conn. June 3, 2014) ..........9

*Haber v. United States*,
    823 F.3d 746 (2d Cir. 2016)...........................................................8, 13

*Hobson v. Kemper Indep. Ins. Co.*,
    No. 3:20CV00812(JCH), 2021 WL 3486867 (D. Conn. Aug. 9, 2021)..................20

*ID7D Co., Ltd. v. Sears Holding Corp.*,
    2012 WL 1247329 (D. Conn. Apr. 13, 2012) .........................................13

*Klein v. Qlik Technologies, Inc.*,
    906 F.3d 215 (2d Cir. 2018).................................................................13

*Liu v. United States Cong.*,
    834 Fed. App'x 600 (2d Cir. 2020)........................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................12, 13

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003).................................................................12

*Molchatsky v. United States*,
    778 F. Supp. 2d 421 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013) ............................8

*Pub. Interest Research Grp. Of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*,
    913 F.2d 64 (3d Cir. 1990).................................................................13

*Rocky Mountain Helium, LLC v. United States*,
    841 F.3d 1320 (Fed. Cir. 2016)............................................................11

*Siegel v. Apergis*,
    610 F. App'x 15 (2d Cir. 2015) ........................................................9, 10

*Sierra Club v. Tenn. Valley Auth.*,
    430 F.3d 1337 (11th Cir. 2005) ...........................................................15

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020).................................................................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................14, 17

*Sputz v. Alltran Fin., LP*,
No. 21-CV-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021).......................11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)...............................................................................................18

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*,
207 F.3d 789 (5th Cir. 2000) .................................................................................15

*Tyco Healthcare Grp. LP v. Ethicon Endo Surgery, Inc.*,
531 F. Supp. 2d 282 (D. Conn. 2008), aff'd, 587 F.3d 1375 (Fed. Cir. 2009).........10

*U.S. v. Bond*,
762 F.3d 255 (2d Cir. 2014)...................................................................................10

*Vitiello v. Cnty. of Nassau*, No. 19CV3465JMAAKT,
2020 WL 5820333 (E.D.N.Y. Sept. 30, 2020) .......................................................20

*Warth v. Seldin*,
422 U.S. 490 (1975)...............................................................................................10

*Yankovich v. Applus Techs., Inc.*,
No. 3:21-CV-00720 (KAD), 2022 WL 3212365 (D. Conn. Aug. 9, 2022)...............12

**Statutes**

28 U.S.C. § 2462......................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...............................................................................................7

Fed. R. Civ. P. 26(b)(2)(C) .........................................................................................8

Fed. R. Civ. P. 26(f).....................................................................................................5

Fed. R. Civ. P. 12(b)(1), (2).........................................................................................2

Local Rule of Civil Procedure 26(f) .............................................................................5

Fed. R. Civ. P. 12(b)(1)............................................................................................2, 8

Fed. R. Civ. P. 26(a)(1)................................................................................................6

## INTRODUCTION

In their Motion for Pre-Filing Conference, Defendants asked to file two distinct motions to dismiss. The first motion would challenge subject matter jurisdiction on the ground that Plaintiff lacks Article III and associational standing—an inquiry that rests on whether Plaintiff's members can establish a concrete and particularized, actual and imminent injury-in-fact that is fairly traceable to the Defendants and redressable. The second motion would assert a lack of personal jurisdiction over a defunct corporate defendant—a party whom Plaintiff now seeks to dismiss from this action.

At the Pre-Filing Conference, Defendants explained the contours of the limited jurisdictional discovery needed for those jurisdictional motions and opposed Plaintiff's efforts to obtain improper merits discovery at this preliminary stage. Nevertheless, Plaintiff now seeks to compel discovery of an assortment of varied requests, confusingly styled as "frequency and regularity" evidence. But the requests at issue go far beyond such inquiries. Indeed, the only "frequency and regularity" considered on an analysis of associational standing is that of *Plaintiff's members' activity*—not Defendants' activity. And the jurisprudence in this area holds firmly that standing cannot be predicated on probable or inferred violations.

More fundamentally, when subject matter jurisdiction has been challenged, that threshold question suspends any inquiry into the merits. As a corollary to this well-established rule, when jurisdiction is in question, unless and until a plaintiff has shown a reasonable basis for assuming jurisdiction, discovery must be strictly limited to the jurisdictional issues. And ironically, in seeking merits discovery, Plaintiff overlooks that in determining standing, the Court must assume the merits of Plaintiff's claims. Thus, there is no practical reason to allow merits discovery and a jurisdictional mandate to deny it.

Plaintiff's motion to compel (ECF No. 63) should be denied.

## PROCEDURAL BACKGROUND

This action is a citizen suit brought by Plaintiff Conservation Law Foundation, Inc. ("CLF") against Defendants All-Star Transportation, LLC ("All-Star") and defunct entity Student Transportation of America, LLC ("STA LLC")[1] under the federal Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, for alleged violations of a Connecticut state regulation governing motor vehicle emissions, purportedly occurring between October 16, 2019, and February 5, 2021, at four All-Star locations. *See* Compl. (ECF No. 1).

On September 28, 2021, Defendants filed a Motion for Pre-Filing Conference ("Pre-Filing Motion") indicating their intention to file motions to dismiss for lack of subject matter jurisdiction, as well as lack of personal jurisdiction over STA LLC, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (2) respectively. ECF No. 35. Additionally, "Defendants request[ed] the Court's permission to conduct limited and targeted jurisdictional discovery in furtherance []of" its anticipated Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, based on CLF's standing, or lack thereof, to bring its claims. Pre-Filing Mot. at 2. Defendants also argued in their Pre-Filing Motion that "Plaintiff should be denied leave to replead its claims against All-Star's parent company, assuming that was Plaintiff's reason for joining STA LLC in the first instance." Pre-Filing Mot. at 2.

## 1.     THE PRE-FILING CONFERENCE.

On October 21, 2021, the Court held a telephonic Pre-Filing Conference to discuss the anticipated motions and request for jurisdictional discovery. ECF No. 42. The transcript of this conference is attached hereto as **Exhibit A**.

---

[1] CLF's effort to dismiss STA LLC and name Non-Party Student Transportation of America, Inc., despite being on notice that STA LLC is defunct since before filing this action and repeatedly representing to Defendants and the Court that it would not seek to amend notwithstanding, is the subject of separate briefing pending before the Court. *See* ECF Nos. 53 & 66.

### (a) *AS TO SUBJECT MATTER JURISDICTION.*

During the Pre-Filing Conference, the undersigned explained that Defendants sought to "conduct written discovery and depositions of the individual members of CLF that would support or not support CLF's standing in this matter, and following the close of that jurisdictional discovery period … [they] would file the 12(b)(1) motion." **Ex. A** at 5:22–6:3. CLF then requested to also "be granted the opportunity to take discovery and that includes depositions as well of defendants' managers and drivers, and that's regarding the documentation of the illegal idling, the actual violation of the law." **Ex. A** at 8:16–25.

In response, counsel for Defendants emphasized that such discovery was outside the bounds of the standing inquiry, which assumes the merits of the plaintiff's claim, and focuses solely on whether the plaintiff may advance that claim:

> *[C]ounsel for the plaintiff is doing something that could be confusing for this purpose. It appears there may be a conflation of the merits of the case from the standing inquiry. The notion of limited targeted discovery is only as to the Article III elements of standing.*

> *We're assuming for the purpose of this motion that the defendant [All-Star] did what it's alleged to have been done in terms of excess idling of school buses. What we're really trying to figure out is[:] is there a concrete and particularized injury, is it actual or isn't it as opposed to conjectural or hypothetical harm, is it traceable to the conduct of the defendant [All-Star] and not independent third parties . . . .*

> *We would not think it would be appropriate at all to say, hey, in 90 days complete all discovery in the case when the only question that's before the Court is whether the plaintiff has standing. This is not a case where the standing inquiry intertwines with the merits of the case. I mean, that can happen in other contexts, but if we're going to do wide-open discovery on every claim in the case, then 90 days won't be sufficient because I'm just proposing 90 days when the only people being deposed [would be] the standing witnesses.*

> *If we've got to have two-way discovery, which I think is inappropriate because . . . the subject matter challenge raises the question of whether the district court has any authority to decide the case before it, it's a threshold issue and you can't proceed on the merits based on hypothetical jurisdiction and this is really black letter law. So we would very much object to, quote, wide-open discovery.*

**Ex. A** at 9:12–10:25.

The undersigned offered that if CLF sought "discovery as to Student Transportation of America [LLC] on ***personal jurisdiction*** grounds, that would seem to be appropriate…." **Ex. A** at 11:1–6 (emphasis added).

The Pre-Filing Conference concluded with no further discussion on this point. *See generally* **Ex. A.**

**(b)** ***AS TO PERSONAL JURISDICTION.***

, the Court also noted Defendants' "desire to file a motion claiming lack of personal jurisdiction over defendant STA, LLC because it's defunct [and asked:] Does the plaintiff intend to pursue their claims against STA?" **Ex. A** at 4:18–23. CLF counsel responded: "Yes, we do your Honor." *Id.* Thereafter, the Court directly asked CLF if it would seek leave to amend its Complaint, an offer that CLF explicitly declined:

> THE COURT: All right. Now, the purpose of the prefiling conference is to give the nonmoving side the opportunity to hear what the moving party has in mind by way of motions and be given the opportunity to amend the complaint if they seek to do so in order to address those forthcoming claims. The purpose of that is to conserve resources in the event that repleading or amended pleading can eliminate the issues. It may not be able to eliminate the issues but the plaintiffs will be given the opportunity to amend. Do you think that you will take advantage of the opportunity to amend on behalf of the plaintiff?

> MS. GOVERN: Your Honor, this is Heather Govern for CLF again. CLF, we've established the plausible claims as standing with our pleadings currently, so we do not see the need to amend.

> THE COURT: So having been offered the opportunity to amend and knowing what the claims are to be raised, in all likelihood you are not going to be given an opportunity to amend later having had the opportunity to amend now. What this process does is it gives the defendant a final complaint to target without getting into the unfortunately wasteful circumstances of a granted dismissal, a motion to replead and reopen and another motion to dismiss. So this way, we end it, and if you're satisfied with your complaint, then the defendant can target that. You may have 90 days for you -- to complete your discovery.

**Ex. A** at 7:1–8:5.

The Pre-Filing Conference concluded with no further discussion on this point. *See generally* **Ex. A.**

## 2.     THE JOINT REPORT.

After the Pre-Filing Conference, the matter was referred for a settlement conference before Judge Richardson. ECF No. 39. The parties participated in two settlement conferences but were unable to resolve this matter. ECF Nos. 46 & 49.

On May 9, 2022, the parties submitted a Joint Report of the Parties' Planning Meeting ("Joint Report") pursuant to Federal Rule of Civil Procedure 26(f) and District of Connecticut Local Rule of Civil Procedure 26(f). ECF No. 51. In accordance with the rules, the Joint Report specifically addressed the Court's jurisdiction in this matter, and included the parties' request for a 90-day jurisdictional discovery period.

With respect to Defendants' anticipated motion regarding CLF's lack of standing, the Joint Report makes reference to the parties' discussion at the Pre-Filing Conference, and Defendants consented in good faith to CLF's request to "conduct its own comparable limited and targeted jurisdictional discovery." Joint Report at 2, § II(A).

With respect to STA LLC's anticipated motion regarding personal jurisdiction, Defendants consented in good faith to CLF's request "to conduct limited and targeted jurisdictional discovery to gather facts in opposition to that motion." Joint Report at 2, § II(B). Therein, CLF also represented to Defendants and to the Court that:

> *The plaintiff abides by its representation to the Court during the Pre-Filing Conference held on October 21, 2021 that it will not seek to amend the Complaint.*

Joint Report at 4, § V(D)(i).

On May 26, 2022, the Court entered a Scheduling Order, approving the Joint Report and granting 90 days of jurisdictional discovery. ECF No. 52.

3. **EXCHANGE OF DISCOVERY.**

On June 17, 2022, All-Star timely served its initial disclosures. Responsive to Rule 26(a)(1)(A)(i), All-Star identified the supervisors of each of the four locations where CLF alleges violations of the CAA. In correspondence with CLF, All-Star agreed to make these individuals available to CLF for deposition, and indeed, the depositions of four supervisors were mutually scheduled to occur in the second and third weeks of August 2022. All-Star also agreed to the depositions of two other individuals, which were scheduled for the second week of August 2022.

On June 17, 2022, STA LLC also timely served its initial disclosures. Responsive to Rule 26(a)(1)(A)(ii), STA LLC identified and thereafter produced a certified copy of a publicly available document from the Connecticut Secretary of State reflecting that the entity withdrew its registration on September 30, 2016. The disclosures also identified one individual, a Senior Vice President of STA Inc., who has knowledge of facts related to the defunct status of STA LLC. STA LLC agreed to make this individual available for deposition, which was scheduled for the first week of August 2022.

On July 14, 2022, All-Star and STA LLC served their objections and responses to CLF's discovery requests, which are the subject of this motion. Although many of CLF's requests, read literally, are beyond the scope of the limited jurisdictional discovery granted by the Court, Defendants chose to answer the requests as best-interpreted to pertain to jurisdiction in an effort to be cooperative and to avoid seeking the Court's intervention. As explained therein:

> [T]he foregoing objections and responses are set forth with the understanding that discovery at this time is limited to jurisdictional discovery in connection with [Defendants'] anticipated dispositive motions practice and as set forth in the Court's Scheduling Order (ECF No. 52) and the Parties' Joint Rule 26(f) Report (ECF No. 51), and are made upon the good-faith assumption that CLF's requests are intended to be so limited.

*See* CLF Ex. D at 1; CLF Ex. E at 1.

On July 22, 2022, CLF's counsel contacted the undersigned with a request to discuss the status of STA LLC and other discovery issues. The parties met and conferred on July 26, 2022, when, for the first time, CLF indicated its intention to join STA Inc. as a defendant. CLF also contended it is entitled to discovery as to its "allegation" that All-Star has engaged in a "pattern and practice" of unlawful idling, and as to All-Star's parent company. The undersigned explained that such discovery is irrelevant because CLF's substantive allegations are accepted as true for purposes of determining CLF's standing and All-Star's parent company is not a party to this case

## 4.  MOTION PRACTICE.

On July 29, 2022 CLF filed a Motion for Leave to File an Amended Complaint, seeking in part to dismiss STA LLC and name in its place Non-Part Student Transportation of America, Inc. ("Inc."). That motion remains pending before this Court. *See* ECF Nos. 53 & 66. On August 8, 2022, the parties filed a Joint Motion for Extension of Time, anticipating needing the Court's assistance in resolving numerous discovery disputes, including the foregoing. ECF No. 58. On August 12, 2022, CLF filed its Motion to Compel Documents Responsive to Plaintiff's First Set of Interrogatories and Requests for Production (ECF No. 63) and Memorandum of Law In Support of the same (ECF No. 63-1) ("Mem.") (collectively, the "Motion"). Defendants submit this Memorandum in Opposition to Plaintiff's Motion.

## LEGAL STANDARD

While a party is usually permitted to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1), that is not the standard where the parties are engaged in ***jurisdictional*** discovery. CLF's Motion fails to address the legal standard in such proceedings. Mem. at 4–5. In this circuit, "[u]ltimately, whether to allow ... jurisdictional discovery and, if so ***to what extent***, are matters committed to a trial judge's broad discretion." *Friedman v. SThree PLC.*, No. 3:14-CV-0378 (AWT), 2015 WL

13628133, at *1 (D. Conn. July 1, 2015) (citation omitted); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." (internal quotation omitted)).

The Court's discretion as to the scope of jurisdictional discovery follows from the discretion it has to limit discovery generally, even merits discovery, such as when "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery....").

The "party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013). However, "[a] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (internal quotation and citation omitted)). Accordingly, a court is not obligated to permit jurisdictional discovery "where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736, 761 (S.D.N.Y. 2004) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185–86 (2d Cir. 1998)). Likewise, "a district court does not abuse its discretion if it denies jurisdictional discovery where a plaintiff 'failed to show how the information [it] hoped to obtain from this discovery would bear on the critical issue' for jurisdiction." *Haber*, 823 F.3d at 753 (quoting

*Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004)).

## ARGUMENT

The Motion reflects a fundamental misunderstanding of the governing law and requests a fishing expedition on the merits of the substantive claims—which are assumed anyway—in the face of a challenge to the Court's subject matter jurisdiction. That threshold question must be decided at the outset, and merits discovery should not proceed in the meantime. Moreover, the documents and information sought are not reasonably calculated to lead to the discovery of evidence admissible for the purposes of a jurisdictional hearing and/or are not proportional to the needs of jurisdictional discovery. CLF's Motion should be denied.

**1.     CLF is Limited to Jurisdictional Discovery.**

CLF asks the Court to compel Defendants to engage in merits discovery before this Court has even made a threshold determination as to whether it has subject-matter jurisdiction over CLF's claims. The Court should deny any attempt by CLF to compel merits discovery.

"Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's" claim. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). "Without jurisdiction the court cannot proceed at all in any cause" because jurisdiction "is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) (summary order) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *see also Gonzalez v. Option One Mortg. Corp.*, No. 3:12–CV–1470, 2014 WL 2475893, at *14 (D. Conn. June 3, 2014) ("Absent subject matter jurisdiction, the Court lacks power to declare the law and must simply dismiss the case.").

Subject-matter jurisdiction "is a threshold question that must be resolved before proceeding to the merits." *U.S. v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quoting *Steel*, 523 U.S. at 83).

Given this strict edict, in *Siegel*, the Second Circuit reversed the district court's attempt to rule on questions of issue and claim preclusion *after* finding that it lacked subject-matter jurisdiction because the "[i]ssue and claim preclusion go to the merits of a claim, which a court cannot adjudicate in the absence of jurisdiction." 610 F. App'x at 16. For the same reason, the Second Circuit in *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990), held that, generally, when a court's jurisdiction is in question, "a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery."

Defendants have asserted that CLF lacks standing to bring this action, which calls into question the Court's subject matter jurisdiction. *See Tyco Healthcare Grp. LP v. Ethicon Endo Surgery, Inc.*, 531 F. Supp. 2d 282, 283 (D. Conn. 2008), aff'd, 587 F.3d 1375 (Fed. Cir. 2009). ("Standing is a constitutional prerequisite to the Court's subject matter jurisdiction . . . ."). At this stage, the Court should strictly limit discovery to the jurisdictional issues.

## 2. The Merits of CLF's Claims are Assumed.

"[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). For this reason, the Second Circuit cautions against "arguments that would essentially collapse the standing inquiry into the merits and attempts to conflate the threshold question of the plaintiff's standing under Article III ... with the question of whether [the plaintiff] has a valid claim on the merits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (internal quotations and alterations omitted) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003); *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000)).

Indeed, "the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 664 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020); *see also e.g.*, *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (holding that a proper standing analysis "assume[s] the merits of a litigant's claim." (emphasis added) (citing 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531 (3d ed. 2008 & Supp. 2016)).

In assuming the alleged violations have occurred, what "courts may not assume [is] that the existence of a statutory prohibition or obligation automatically elevates violation of that prohibition or obligation to a harm that is concrete under Article III." *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033, at *2 (S.D.N.Y. Dec. 5, 2021). This is why the question of standing turns on a showing of the plaintiff's harm and not the defendant's conduct. Defendants explained the scope of the anticipated contemplated jurisdictional discovery in precisely this manner at the Pre-Filing Conference:

> *It appears there may be a conflation of the merits of the case from the standing inquiry. . . . We're assuming for the purpose of this motion that the defendant did what it's alleged to have been done in terms of excess idling of school buses. What we're really trying to figure out is[:] is there a concrete and particularized injury, is it actual or isn't it as opposed to conjectural or hypothetical harm, is it traceable to the conduct of the defendant and not independent third. . . .*

> *This is not a case where the standing inquiry intertwines with the merits of the case . . . it's a threshold issue and you can't proceed on the merits based on hypothetical jurisdiction and this is really black letter law. So we would very much object to, quote, wide-open discovery. . . .*

**Ex. A** at 9:12–10:25. The information relevant to CLF's harm for the purposes of determining Article III standing is solely within the control of CLF and its members, and the discovery sought here, conflating that harm with CLF's merits allegations, should be denied.

**3.    CLF Has Not Met Its Burden to Show the Relevance of the Sought Discovery as to CLF's Article III and Associational Standing.**

In connection with Defendants' forthcoming motion regarding CLF's lack of Article III and Associational Standing, CLF contends it is entitled to jurisdictional discovery related to the "frequency and regularity of excessive idling." Mem. At 7. That position lacks support; CLF is bound by its pleading. Moreover, CLF's requests are not proportional to the needs of jurisdictional discovery.

Recall that CLF "must demonstrate standing for each claim and form of relief sought." *Liu v. United States Cong.*, 834 Fed. App'x 600, 602 (2d Cir. 2020) (internal quotation omitted). Standing must be proved "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992). CLF bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

"A plaintiff has Article III standing when the plaintiff has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Yankovich v. Applus Techs., Inc.*, No. 3:21-CV-00720 (KAD), 2022 WL 3212365, at *1 (D. Conn. Aug. 9, 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Moreover, organizations like CLF must also have "associational standing" on behalf of their members, and must show that: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006) (internal citations omitted).

Remarkably, CLF conclusorily 'disposes' of this issue in a footnote, contending with no

further explanation that "CLF has organizational standing." Mem. at 7 n. 9. CLF has not established that it has organizational standing, and Defendants contend it cannot do so here—such is the basis of its anticipated motion to dismiss. "To establish the first prong of this test, an organization … must show that one or more of its members has" met "the familiar three elements of standing under Article III." *Fac. v. New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021), *cert. denied sub nom. Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 142 S. Ct. 2813 (2022). Moreover, "[i]t is well established that [a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *ID7D Co., Ltd. v. Sears Holding Corp.*, 2012 WL 1247329, at *4 (D. Conn. Apr. 13, 2012) (internal quotation omitted); *see also Lujan*, 504 U.S. at 570 n.5 (explaining that "standing is to be determined as of the commencement of suit"); *Klein v. Qlik Technologies, Inc.*, 906 F.3d 215 (2d Cir. 2018) ("Standing doctrine evaluates a litigant's personal stake as of the outset of litigation.").

CLF's attempted gloss on the associational standing requirement is improper, because allowing an organization without derivative standing to proceed with litigation such as this essentially "convert[s] the judicial process into 'no more than a vehicle for the vindication of the valued interests of concerned bystanders.'" *Pub. Interest Research Grp. Of New Jersey, Inc. v. Powell Duffryn Terminals Inc*., 913 F.2d 64, 72 (3d Cir. 1990).

(a)     *CLF's "Frequency and Regularity" Argument is Inapposite to the Subject Matter Jurisdiction Inquiry, and Further Lacks Legitimate Support Even In Consideration of the Merits.*

The demanded "frequency and regularity" evidence has no bearing on the critical issue of whether any of CLF's members have standing, and will not establish facts sufficient to permit CLF to withstand Defendants' forthcoming motion. *See generally Haber*, 823 F.3d at 753.

Contrary to its footnoted assertion, CLF must carry its burden to show that, on the date the Complaint was filed, "at least one or more of its members ha[d]: (1) suffered an injury-in-fact—

an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *New York Univ.*, 11 F.4th at 75 (internal quotation omitted).

CLF claims that (1) "frequency and regularity of exposure and observation of polluting events are factors in determining injury in fact for standing," Mem. at 7; (2) "courts look to the reasonableness of the fear of harm" and such fear increases with the frequency of idling, Mem. at 8 – 9); and (3) "further investigation will indicate that the instances of idling documented by CLF are … evidence of a broader *pattern and practice of idling*," Mem. at 10 (emphasis in original). None of these arguments has anything to say about CLF's standing.

### (i) *Defendants are not in possession of information that would reveal the frequency or regularity with which CLF's members have experienced or observed idling.*

CLF first claims that "frequency and regularity of **exposure** and **observation** of polluting events are factors in determining injury in fact for standing." Mem. at 7. Ironically, this claim belies the purported relevance of the discovery sought. It is Defendants who seek discovery from CLF's members as to their exposure and observation of the allegedly excessive emissions. What CLF seeks here is merits discovery about the frequency and regularity of unlawful idling.

The relevant showing for purposes of Article III standing … is not injury to the environment but injury **to the plaintiff**." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (emphasis added). Among the numerous requirements to show injury-in-fact, one element requires that the injury "must affect the plaintiff in a **personal** and **individual** way." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016) (emphasis added).

It is not surprising, therefore, that every case CLF cites in support of its first point, that "regularity and frequency" are relevant to injury-in-fact (Mem. at 7–8), looks at such frequency and regularity with respect to the **members** experiences, and not the actions of the defendant.

In *Texans United*, the court was only able to find "repeated exposure" because the plaintiff's "***[a]ffiants*** state[d] that they ha[d] suffered repeated exposure." *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.,* 207 F.3d 789, 792 (5th Cir. 2000) (emphasis added) (finding this element satisfied because the defendant offered no contrary authority or persuasive analysis to challenge the plaintiff's assertion). In *Sierra Club*, the court reviewed "an affidavit that [***the member***] regularly ***saw*** plumes of smoke from the Colbert plant." *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344–45 (11th Cir. 2005) (emphasis added). In *Environment Texas Citizen Lobby*, the court reviewed "testimony from four of [the plaintiff's members]" that established what the "***members*** regularly ***saw***." *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp*., 968 F.3d 357, 369 (5th Cir. 2020), as revised (Aug. 3, 2020) (emphasis added). In *Gaston Copper*, the member alleged that he and his family fished, ate fish from, swam in, and boated on the allegedly polluted lake on his property. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp*., 204 F.3d 149, 153 (4th Cir. 2000). In *Consolidated Rail Corp.*, the court reviewed a citizen affidavit averring that the ***member*** "passe[d] the [River] regularly." *Friends of the Earth v. Consolidated Rail Corp*., 768 F.2d 57, 61 (2d Cir. 1985).

In each of those cases, the showing of injury-in-fact was not made with discovery or evidence showing the *defendant's* conduct; rather, it was based wholly on what the ***plaintiff's members*** experienced. Evidence of All-Star's alleged frequency or regularity of idling—to the extent such evidence exists—is meaningless if CLF cannot put forth a member to show a personal and individualized injury arising from that conduct.

CLF's members know the frequency and regularity (or lack thereof) with which they have seen, smelled, or been affected by an All-Star bus. And no discovery from Defendants can provide CLF's members something they did not have at the outset of this litigation. Indeed, jurisdictional discovery is rightfully declined where the "[p]laintiff has not and cannot—demonstrate that information it requires to establish [] jurisdiction … is 'peculiarly within the knowledge of the opposing party.'" *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*, No. 3:17-CV-00817 (CSH), 2018 WL 4039326, at *13 (D. Conn. Aug. 23, 2018) (quoting *Gualandi*, 385 F.3d at 244). Here, the only information relevant to CLF's standing is within it and its members' possession. And any claim CLF makes that information from Defendants is "necessary" for it to withstand Defendants' motion should be construed as tantamount to an admission that its members are unable to aver any genuine or legitimate injury-in-fact.

### (ii) *Defendants are not in possession of information that would reveal the reasonableness of any fear CLF's members have.*

CLF's extension of its theory to the "reasonableness of fear" is likewise unavailing. CLF's own Motion acknowledges that this showing was made based on "the affidavits and testimony of the plaintiff's members." Mem. at 8 (quotation and alteration omitted). Indeed, CLF's own quotation of *Borough of Upper Saddle River* makes clear that the relevant inquiry was "the *frequency of* and manner in which *[the] [p]laintiffs* use the Saddle River," not the frequency of the alleged pollution or violative behavior. Mem. at 9 (first emphasis in original, second emphasis added) (quoting *Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1,* 16 F. Supp. 3d 294, 315–16 (S.D.N.Y. 2014)). Only CLF's members can speak to their fear of All-Star's operations and only their testimony can establish whether or not that fear is reasonable; not discovery from Defendants. Thus, CLF's Motion should be denied.

### (iii) *CLF's 'pattern and practice' argument has no basis in the law.*

Finally, CLF claims that it is entitled to the sought discovery because "CLF alleges in its Complaint … a broader pattern and practice of idling over the last five years." Mem. at 10. CLF is ultimately asking the Court to infer, rather than find, violations of the CAA based on its theory that an alleged "pattern and practice" of idling makes it probable that additional violations occurred. There is no legal basis to support that standing can be predicated on a "pattern and practice" theory of liability (nor indeed, that liability on the merits can be so established).

CLF's only basis for articulating this theory is *United States v. Paul Revere Transportation, Inc.*, No. 1:06-cv-12297 (D. Mass.). But *Paul Revere* does not actually support CLF's position. Indeed, CLF is unable to cite any judicial opinion from *Paul Revere* upholding a "pattern and practice" of liability because no such opinion exists. CLF relies on the plaintiff's memorandum in support of its motion for summary judgment for this theory (Mem. at 10). Yet the plaintiff's motion for summary judgment in that case was denied. *Id.* (electronic clerk's notice entered March 17, 2009).

CLF also cites to a trial transcript and verdict from *Paul Revere*, Mem. at 10, but these likewise carry no precedential value. After the verdict was entered in that case, the defendant moved for an altered judgment notwithstanding the verdict, specifically calling the finding of inferred violations into question. *Paul Revere*, ECF No. 117. However, before the court could rule on that motion, the parties settled by consent decree.

No court has extended CAA liability on a theory of inferred violations. As is well-established, an organizational plaintiff *must* prove standing by showing that at least one of its members meets all the requisite elements for Article III standing. *New York Univ.*, 11 F.4th at 75. This requires a showing of a concrete and particularized (that is, affecting the member in a personal and individual way), and actual and imminent harm. *See Spokeo*, 578 U.S. at 339–40. Accordingly,

courts have widely held that standing cannot be conferred on the basis of "probable" violations.

The Supreme Court has held that finding organizational standing based on an organization's self-description of the activities of its members and a statistical probability of violations giving rise to injury-in-fact "would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also New York Univ.*, 11 F.4th at 75 (citing *Summers*).

Even if "it is certainly possible—perhaps even likely—that one individual" would have suffered an injury-in-fact based on a statistical assessment of probable violations, "that speculation does not suffice." *Summers*, 555 U.S. at 499. Thus, even if CLF could establish a "pattern and practice" of unlawful idling, it would not excuse CLF's burden to put forth at least one member with an actual injury-in-fact. And if CLF can do so, then it does not need to rely on its "pattern and practice" theory of liability to establish standing in the first place.

**(b)** ***CLF's Requests Are Not Proportional to the Needs of Jurisdictional Discovery, and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence for a Jurisdictional Hearing.***

CLF identified two categories of requests it contends relate to the "frequency and regularity of excessive idling": (1) certain vehicle information, and (2) certain employee information. Mem. At 7. Even if the Court were to allow CLF to discover "frequency and regularity" at this stage, the requested discovery is not proportional to the needs of jurisdictional discovery and is not reasonably calculated to lead to the discovery of evidence that would be admissible at a hearing on jurisdictional issues.

### *(i)* ***Certain vehicle information is inapposite to standing.***

CLF contends that "Interrogatories Nos. 6, 9, 10, 11, 13, 18, 20, 21, and 22, and Requests Nos. 5, 9, 10, 11, 12, 23, 24, 26, 27, 28, 29, 30, and 31" seek "evidence of the frequency and

regularity of excessive idling." Mem. at 11. CLF's incoherent categorization of the requests at issue is of little help, for the benefit of the Court, the disputed requests are described more fully herein.

- **Interrogatory No. 6 and Request No. 5** seek to identify "which of the vehicles … in the violation table are operated by Defendants" and "documents relating to the ownership of vehicles listed in the violation table." CLF Exs. D & E.

- **Interrogatory No. 9 and Request No. 9** seek to identify "who is responsible for directing or conducting investigations and/or analyzing data regarding compliance" and "documents describing the responsibilities and duties of and identifying Defendants' employees who analyze data regarding compliance." *Id.*

- **Interrogatory No. 10 and Requests Nos. 10, 11, and 12** seek to identify "who is responsible for decisions regarding installation of Vehicle Data-Collecting Technologies" and documents "describing the responsibilities and duties of and identifying [who is] responsible for decisions regarding," or "the installation of," "Vehicle Data-Collecting Technologies," or "responsible for decisions regarding air pollutant emissions control measures." *Id.*

- **Interrogatory No. 11** seeks to identify "who is responsible for training drivers and developing manuals, [etc.]." *Id.*

- **Interrogatory No. 13 and Request No. 23** seek to identify "who is responsible for communicating with [federal, local, or municipal] air quality or public health agencies regarding idling, air emissions, and/or air pollution," "the nature of these communications," and "documents relating to Defendants' compliance or noncompliance." *Id.*

- **Interrogatory No. 18 and Request No. 24** seek to identify "who is responsible for taking measures in response to this matter since December 18, 2020, including changes to policies and practices regarding idling, training, driver supervision and discipline, maintenance, and/or pre-trip inspections," and "documents regarding measures taken in response to this matter since December 18, 2020." *Id.*

- **Interrogatory No. 20** seeks to identify "Vehicle Data-Collecting Technologies, its features, [the] categories of information it tracks, … where this data is gathered and stored, [] in what format the data is retained[,] Defendants' use[, and …] a list of any and all records." *Id.*

- **Interrogatory No. 21** seeks to identify "any and all emissions control measures or technologies used by Defendants' and installed in their vehicles, and the dates on which such measures or technologies were installed." *Id.*

- **Interrogatory No. 22** seeks to identify "all materials, substances, or pollutants present in the emissions from Defendants' vehicles." *Id.*

- **Request No. 26** seeks "documents relating to emissions … including … the incidence, frequency, and magnitude of idling and air pollutants from vehicle exhaust at bus lots; [] air pollutant monitoring …, and [] the air quality near at the bus lots." *Id.*

- **Request No. 27** seeks "materials … relating to the operation of any vehicle involved in an alleged violation … including … (a) any video footage …; (b) all documents relating to the number and identities of people (including Defendants and any passengers) inside vehicles involved in alleged idling …; and (c) all documents relating to when and how many passenger boarded or unloaded from vehicles involved in alleged violations." *Id.*

CLF has not come close to carrying its burden to show how these requests are relevant to jurisdictional discovery. For example, even under CLF's misguided view of jurisdictional issues, the ownership of the vehicles is plainly unrelated to the "frequency and regularity" of any unlawful idling. Similarly, documents relating to the number and identities of employees or passengers inside the allegedly unlawfully idling buses cannot support a showing that *CLF* has standing. *See ExxonMobil*, 968 F.3d at 365–66 ("[O]ne injury does not entitle a litigant to right other wrongs that did not injure it.... [A CAA] plaintiff needs standing for each violation for which it seeks a penalty."). Nor can CLF establish its own standing by inquiring into which "pollutants [are] present in the emissions." *See Vitiello v. Cnty. of Nassau*, No. 19CV3465JMAAKT, 2020 WL 5820333, at *2 (E.D.N.Y. Sept. 30, 2020) (confirming that dismissal was appropriate where a notice letter failed to identify the pollutant at issue).

Moreover, even accepting CLF's relevancy arguments, Defendants' objections are valid. Confusingly, CLF characterizes Defendants' objections in its recitation of case law pertaining to objections based on undue burden. Mem. at 12. But Defendants did not object to any of the above-enumerated requests as unduly burdensome. *See* CLF Exs. D & E. Rather, Defendants object that the requests are overly broad for the limited and targeted jurisdictional discovery ordered by the Court and not proportional to the needs of the jurisdictional inquiry. "Proportionality focuses on the marginal utility of the discovery sought." *Hobson v. Kemper Indep. Ins. Co.*, No. 3:20CV00812(JCH), 2021 WL 3486867, at *2 (D. Conn. Aug. 9, 2021) (internal quotation omitted). Moreover, as explained in detail in Defendants' responses, Defendants sought to respond fully and in good faith to the requests, assuming they were intended to bear on jurisdictional issues

and not merits issues. That CLF disagrees with the scope of what is relevant to jurisdictional discovery, despite the parties' clear discussion of this at the Pre-Filing Conference, does not make Defendants' objections and responses any less proper.

### *(ii)* *Certain employee information is inapposite to standing.*

CLF contends that "Interrogatories Nos. 4, 5, 7, 9, 12, 13, 16, 17, 18, and 19, and Requests Nos. 6, 7, 8, 9, 13, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26, and 27" seek "evidence of the frequency and regularity of excessive idling." Mem. at 11. For the benefit of the Court, the disputed requests are described more fully herein.

- **Interrogatory No. 4** seeks to identify "each and every individual who has been involved with activities related in any way to the operation of any vehicle involved in an alleged violation" including their "name, job title, job description, dates affiliated with the Defendants, and describe in detail their role in the aforementioned activities." CLF Exs. D & E.

- **Interrogatory No. 5 and Request No. 6** seek to identify "each and every individual responsible for supervising, managing, and/or overseeing the bus lots," including their "name, job title, job description, dates affiliated with the Defendants, and describe in detail their role in the aforementioned activities," and "documents describing the responsibilities and duties of and identifying Defendants' employees who are responsible for managing, directing and/or conducting operations … including bus maintenance." *Id.*

- **Interrogatory No. 7 and Request No. 7** seek to identify "who is responsible for decisions regarding compliance with environmental requirements" and "documents describing the responsibilities and duties of and identifying Defendants' employees who are responsible for decisions regarding compliance with environmental requirements." *Id.*

- **Interrogatory No. 9 and Requests Nos. 8 & 9** seek to identify "who is responsible for directing or conducting investigations and/or analyzing data regarding compliance with environmental requirements" and documents "describing the responsibilities and duties of and identifying Defendants' employees who are responsible for directing or conducting investigations" and "who analyze data regarding compliance with environmental requirements." *Id.*

- **Interrogatory No. 12 and Requests Nos. 13, 14 & 15** seek to identify "who is responsible for developing, implementing, and taking disciplinary action of Defendants' idling-related policies," and documents "describing the responsibilities and duties of and identifying Defendants' employees who train drivers … are responsible for manuals, supervision, guidance, policies, and instructions," "developing and implementing Defendants' idling-related policies," and "who take disciplinary action" related to "Defendants' idling-related policies." *Id.*

- **Interrogatory No. 13 and Request No. 23** seek to identify "who is responsible for communicating with [federal, local, or municipal] air quality or public health agencies regarding idling, air emissions, and/or air pollution," "the nature of these communications," and "documents relating to Defendants' compliance or noncompliance." *Id.*

- **Interrogatories Nos. 16 & 17** seek to identify "employees who attended meetings regarding this matter" and "who attended meetings regarding pending or past investigations, notices of violation, consent decrees, or litigation regarding violations." *Id.*

- **Requests Nos. 16 & 17** seek to identify documents identifying "who operated a vehicle involved in an alleged violation … who started that vehicle," and "who supervised or managed operators or mechanics who operated a vehicle involved in an alleged violation," including "shift schedules, time cards, or bus assignment lists." *Id.*

- **Request No. 18** seeks to identify "documents relating to the employment history, training history, and disciplinary history of all of Defendants' employees who supervised or managed operators or mechanics who operated a vehicle involved in an alleged violation … including but not limited to operator resumes or CVs, documentation of training, performance reviews, documentation of bonus payments, and disciplinary records." *Id.*

- **Interrogatory No. 18 and Request No. 24** seek to identify "who is responsible for taking measures in response to this matter since December 18, 2020, including changes to policies and practices regarding idling, training, driver supervision and discipline, maintenance, and/or pre-trip inspections," and "documents regarding measures taken in response to this matter since December 18, 2020." *Id.*

- **Request No. 19** seeks to identify "communications … regarding compliance with environmental requirements." *Id.*

- **Interrogatory No. 19 and Request No. 25** seek to identify "names and contact information of individuals who complained to Defendants regarding air pollutants, emissions, noise, vibrations, smell, exhaust, idling vehicles, or poor air quality generated and/or caused by vehicles owned or operated by Defendants and/or at or near the bus lots," and "documents regarding any [such] complaints." *Id.*

- **Request No. 21** seeks to identify "documents within the past ten years pertaining to pending or past citations, investigations, notices of violation, consent decrees, or litigation regarding violations." *Id.*

- **Request No. 26** seeks "documents relating to emissions … including … the incidence, frequency, and magnitude of idling and air pollutants from vehicle exhaust at bus lots; [] air pollutant monitoring …, and [] the air quality near at the bus lots." *Id.*

- **Request No. 27** seeks "materials … relating to the operation of any vehicle involved in an alleged violation … including … (a) any video footage …; (b) all documents relating to the number and identities of people (including Defendants and any passengers) inside vehicles involved in alleged idling …; and (c) all documents relating to when and how many passenger boarded or unloaded from vehicles involved in alleged violations." *Id.*

Again, CLF has not met its burden to show how these requests are relevant to jurisdictional discovery. For example, documentation of driver bonus payments plainly has no bearing on whether CLF's members can establish injuries-in-fact that are fairly traceable to the alleged idling and redressable. Similarly, communications with federal, local, or municipal air quality or public health agencies cannot establish CLF's standing. And there is no basis for CLF to seek information dating back ten years, as does Request No. 21, which is well beyond any potentially applicable statute of limitations. *See generally* 28 U.S.C. § 2462. Indeed, such past citations cannot confer standing to CLF in this citizen suit.

*　　*　　*　　*

CLF's requests are not proportional to the needs of jurisdictional discovery, and the Motion should be denied.

### 4. Jurisdictional Discovery as to Personal Jurisdiction Over STA LLC.

In connection with STA LLC's anticipated motion to dismiss for lack of personal jurisdiction, CLF contends it is entitled to discovery regarding "Defendants' Corporate Structure." Mem. At 15. CLF's argument is at best procedurally questionable.

As CLF correctly notes, the parties agree that the Court has personal jurisdiction over All-Star. Mem. at 3 n.4. All-Star does not and has never anticipated bringing a motion on the basis of personal jurisdiction. *See* ECF No. 35. The only jurisdictional discovery that CLF might reasonably make in this matter relates to the personal jurisdiction of STA LLC. However, CLF has finally realized its blunder in this regard, and accepted what Defendants have repeated to CLF since the inception of this litigation, which is that STA LLC has been defunct since September 2016. *See generally* Defs.' Mem. In Opp. CLF's Mot. To Amend (ECF No. 66). But CLF has since asked that the Court dismiss STA LLC, and Defendants do not object to this dismissal. ECF Nos. 53 & 66. Thus, why CLF would now need any discovery as to the personal jurisdiction of STA

LLC, an entity it admits is defunct and seeks to dismiss, is a mystery. CLF's Motion should be denied on this basis alone.

However, CLF also now attempts to back into the issue already briefed by the parties on CLF's Motion to Amend (ECF Nos. 53 & 66), which is the fact that CLF wants to join STA Inc. despite its repeated representations to Defendants and this Court that it would not do so. By contending that CLF is somehow entitled to discover information as to All-Star's parent corporation, the Motion convolutes the jurisdictional discovery process entirely. Indeed, the Motion claims that the requests at issue "are relevant to establish personal jurisdiction over All-Star's parent entity." Mem. at 14. But All-Star's parent entity is not a party to this litigation. And the Court has not granted jurisdictional discovery as to All-Star's parent entity. Nor is discovery as to All-Star's parent corporation relevant to All-Star's anticipated motion as to CLF's standing— the only apparently 'live' anticipated jurisdictional motion presently contemplated by the parties, in light of CLF's requested voluntary dismissal of STA LLC.

Moreover, All-Star's corporate structure is inapposite as to personal jurisdiction over STA LLC or CLF's standing. CLF contends that "Interrogator[y] No. 3, and Requests Nos. 2 and 4" seek "concern[] the corporate structure of each Defendant" and "is relevant for identifying All-Star's parent entity that has minimum contacts with Connecticut." Mem. at 15. For the benefit of the Court, the disputed requests are described more fully herein.

- **Interrogatory No. 3 and Request No. 2** seek to identify "the corporate structure of Defendants and the relationship between All Star and STA," and "documents describing Defendants' corporate structure (including all parent companies and subsidiary companies), organization, and relationship between All Star and STA, including but not limited to organizational charts, agreements between All Star and STA, and agreements between Defendants and third parties." CLF Exs. D & E.
- **Request No. 4** seeks to identify "documents relating to corporate control of any activities at the bus lots, including policies governing Defendants' interactions with each other and any other parent or subsidiaries." *Id.*

The Motion entirely fails to show how these requests are relevant to personal jurisdiction over STA LLC, or to the standing of CLF's members. *Perhaps*, CLF's discovery requests would be within the realm of relevance appropriate for merits discovery, but the parties have not reached that stage of litigation. *Perhaps*, *if* the Court granted CLF's Motion to Amend, and *if* STA Inc. decided to file a motion for lack of personal jurisdiction, and *if* STA Inc. chose to launch a factual, rather than a facial, attack on personal jurisdiction, the Court *might* properly allow CLF to take jurisdictional discovery on this point, but that too is many steps and hypotheticals removed from the issue before the Court today.

To the extent discovery is sought on All-Star's corporate parent, the Motion should be denied.

## CONCLUSION

WHEREFORE, Defendants All-Star Transportation, LLC and Student Transportation of America, LLC respectfully request that the Court deny Plaintiff's Motion to Compel Documents Responsive to Plaintiff's First Set of Interrogatories and Requests for Production.

Dated: September 2, 2022

**ARMSTRONG TEASDALE LLP**

*/s/ Jonathan R. Shulan*
Jonathan R. Shulan, Esq., *pro hac vice*
7700 Forsyth Boulevard, Suite 1800
Saint Louis, MO 63105
Tel. (314) 621-5070
Fax. (314) 612-232
jshulan@atllp.com

Timothy J. Bergère, Esq., *pro hac vice*
Bianca A. Valcarce, Esq., *pro hac vice*
2005 Market Street, 29th Floor
One Commerce Square,
Philadelphia, PA 19103
Tel. (267) 780-2000
Fax. (215) 780-9070
tbergere@atllp.com
bvalcarce@atllp.com

**GFELLER LAURIE LLP**

Melicent B. Thompson, Esq. (ct19868)
Maggie Wroe Rainaud, Esq. (ct30836)
977 Farmington Ave., Suite 200
West Hartford, CT 06107
Tel. (860) 760-8400
Fax. (860) 760-8401
mthompson@gllawgroup.com
mrainaud@gllawgroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, a copy of the foregoing *Defendants'*
*Memorandum in Opposition to Plaintiff's Motion to Compel* was filed electronically with the
Court's CM/ECF system, which will serve all counsel of record.

*/s/ Jonathan R. Shulan*
Attorney for Defendants