UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Conservation Law Foundation, Inc., | |
| Plaintiff, | Civil No. 3:21-cv-00201 (JBA) |
| v. | |
| All-Star Transportation, LLC, *et al.*, | November 11, 2022 |
| Defendants. | |

**RULING ON MOTION TO COMPEL [ECF No. 63]**

The plaintiff, Conservation Law Foundation, Inc. ("CLF"), seeks an order compelling compliance with sixteen interrogatories and twenty-five requests for production ("RFPs") served during the jurisdictional discovery process. (Motion, ECF No. 63; *see also* Memo. of L., ECF No. 63-1.) The defendants oppose the motion, chiefly on the grounds that the requests lack relevance and proportionality to that process. (Opp'n, ECF No. 68.) For the reasons that follow, CLF's motion is denied.

1. **Applicable Legal Principles**

The parties' dispute implicates well-established principles. "Subject to the proportionality requirement and the other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession." *Huseby, LLC v. Bailey*, No. 20-cv-167 (JBA)(TOF), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) (citing Fed. R. Civ. P. 26(b)(1)). Where, as here, the Court has limited the parties to jurisdictional discovery, the discovery requests must be relevant to the jurisdictional analysis. *See First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) ("[G]enerally a plaintiff may be allowed limited discovery

with respect to the jurisdictional issue; but until she has shown a reasonable basis for jurisdiction, she is not entitled to any other discovery.") (internal quotation marks omitted) (citing *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 199); *see also Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petro. Corp.*, No. 14-cv-8445 (WHP), 2017 WL 2491999, at *2 (S.D.N.Y. May 15, 2017) (considering whether requests were "relevant and tailored to achieving the jurisdictional discovery objectives in this action").  "The burden of demonstrating relevance [is] on the party seeking discovery." *A.M. v. Am. Sch. For the Deaf*, No. 3:13-cv-1337 (WWE), 2016 WL 1117363, at *2 (D. Conn. Mar. 22, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-Civ.-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015); *see also Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (same).

Discovery requests must be proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Courts analyze the proportionality of a request by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  "The proportionality analysis focuses on the marginal utility of the requested discovery." *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co.*, No. 3:19-cv-839 (JCH) (RAR), 2020 WL 6074204, at *6 (D. Conn. Oct. 15, 2020); *see also Huseby*, 2021 WL 3206776, at *7.  "[E]ven relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Parimal v. Manitex Int'l, Inc.*, No. 3:19-cv-01910 (MPS) (SALM), 2021 WL 1978347, at *5 (D. Conn. May 18, 2021 (quoting *New Falls Corp. v. Soni*, No. CV-16-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020)).  Put another way, "[t]he

fact that particular information is relevant does not mean that its production will always be proportional to the needs of the case." *Elisa W. by Barricelli v. City of N.Y.*, No. 15-Civ.-5273 (LTS) (HB), 2018 WL 6695278, at *2 (S.D.N.Y. Dec. 20, 2018).  "If relevance alone always rendered information discoverable, the proportionality limitation would be meaningless." *Id.*

Each party bears a burden with respect to proportionality.  For example, "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."  Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments.  Conversely, "the responding party bears the burden on the 'burden and expense' element of the proportionality analysis." *Huseby*, 2021 WL 3206776, at *8 n.3 (citing Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments).  The responding party's burden is typically not met "simply by making a boilerplate objection that [the requested discovery] is not proportional."  *Endurance Am. Spec. Ins. Co. v. Wm. Kramer & Assocs., LLC*, No. 3:18-cv-192 (MPS) (RAR), 2020 WL 6940761, at *7 (D. Conn. Mar. 30, 2020). To successfully resist discovery on grounds of undue burden or expense, the responding party ordinarily must "submit[] affidavits or offer[] evidence revealing the nature of the burden." *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y. 2012) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petro. Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).  District courts may, however, overlook the lack of an affidavit or other evidence of burden when the requests are overly broad or unduly burdensome on their face.  *In re Kidd*, No. 3:20-cv-800 (KAD), 2020 WL 5594122, at *11 (D. Conn. Sept. 18, 2020) (citing cases).

   2.   **Application to CLF's Motion**

CLF characterizes the sixteen interrogatories and twenty-five RFPs as falling into three groups, the first of which includes "information and documents . . . concerning data on Defendants'

3

vehicles," including data from vehicle data recorders. (Memo. of L., ECF No. 63-1, at 11.) CLF says that this information will reveal "the frequency and regularity of excessive idling" of the defendants' school buses, which it contends is relevant to the jurisdictional analysis in this Clean Air Act case because "frequency and regularity of exposure to and observation of polluting events are factors in determining injury in fact for standing." (*Id.* at 11, 7) (citing *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petro. Corp.*, 207 F.3d 789, 792 (5th Cir. 2000)). CLF also argues that "[i]n deciding whether an injury exists for standing, courts look to the reasonableness of the fear of harm" – and to determine the reasonableness of that fear, "the frequency of polluting events is relevant." (*Id.* at 8) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 169 (2000)).

The second group of contested discovery requests includes "information and documents . . . concerning who was involved and what was involved with vehicle operation and/or idling violations." (*Id.* at 13.) CLF says that this group of requests is likewise "relevant to the frequency and regularity of excessive idling and exposure to excessive emissions of dangerous air pollutants, which are relevant to determine standing." (*Id.* at 13.) The third group includes those requests that "relate to whether the Court has specific personal jurisdiction over entities involved with" the defendant All-Star Transportation, LLC's operations. (*Id.* at 15.) In particular, CLF seeks to know whether "All-Star's parent entity . . . has minimum contacts with Connecticut." (*Id.*)

The defendants respond that "[t]he demanded 'frequency and regularity' evidence has no bearing on the critical issue of whether any of CLF's members have standing." (Opp'n at 13.) They reason that, since "'[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff,'" jurisdictional discovery should focus not on "the defendant's conduct" but rather "on what the plaintiff's members experienced." (*Id.* at 14-15)

(quoting *Laidlaw*, 528 U.S. at 181).  At oral argument, they added that this is particularly true when the plaintiff alleges an exclusively "aesthetic" injury, which they contend is the case here.  Summing up their position on the first and second classes of requests, they say that "CLF's members know the frequency and regularity (or lack thereof) with which they have seen, smelled, or been affected by an All-Star bus," and thus, "the only information relevant to CLF's standing is within it and its members' possession." (*Id.* at 16.)  And in response to CLF's arguments about the third class of requests, they contend that the discovery should not be allowed because All-Star's parent is not in the case.

With respect to the first and second classes of requests, the Court agrees with CLF's general proposition – namely, that information on the frequency and regularity with which All-Star idles its buses is relevant to the jurisdictional analysis.  While the defendants are correct that the standing analysis focuses on injury to the plaintiff rather than injury to the environment, *Laidlaw*, 528 U.S. at 181, it does not follow that all information relevant to that inquiry is in CLF's members' possession.  The defendants may have information on when, where, and for how long their buses idled, which CLF can attempt to combine with its own information on its members' whereabouts and activities to show the frequency and regularity with which they were subjected to or affected by the alleged pollution.  And while it might be true that a plaintiff alleging a purely "aesthetic" injury would not need this information to establish standing – because only she knows whether she refrained from enjoying a place or activity on account of nearby pollution – this is not a case in which only "aesthetic" injuries are alleged.  (*See* Compl., ECF No. 1, ¶¶ 147-51) (alleging a variety of health impacts).

Yet the specific requests that CLF has served are overly broad on their face and plainly disproportionate to the needs of the jurisdictional inquiry.  They include, for example, requests

5

that All-Star produce all documents relating to its ownership of its real estate (RFP 5, ECF No. 63-6, at 5); all documents describing its employees' job duties with respect to a wide range of functions (RFPs 6, 7, 9, 10, 11, 12, 13, *id.* at 5-9); all documents concerning "the employment history, training history, and disciplinary history of" any employee who excessively idled a school bus, including "operator resumes or CVs, documentation of training, performance reviews, documentation of bonus payments, and disciplinary records" (RFP 18, *id.* at 10); and all internal communications regarding the company's environmental compliance efforts. (RFP 19, *id.*).

On the other side of the proportionality scale, CLF has not shown that the requested information would have much marginal utility to the standing analysis. CLF claims to have already documented eighty-three instances of excessive idling by All-Star buses (Compl., ECF No. 1, ¶ 140), and at oral argument it struggled to explain what would be added by uncovering more. It expects that the defendants will argue that no CLF members were near the bus yards on those eighty-three occasions – and, therefore, that no CLF members were harmed by the excessive idling. But unless CLF is going to admit that to be the case, the utility of additional instances of idling is merely speculative. *See, e.g., In re Welspun Litig.*, No. 16-cv-6792 (RJS), 2018 WL 4693586, at *2-3 (S.D.N.Y. Mar. 4, 2018) (denying motion to compel compliance with jurisdictional discovery requests where "the burden and expense of seeking discovery . . . outweighs the highly speculative relevancy and usefulness of such information"); *cf. also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("Even where information is relevant, Rule 26(b)(2)(C)(i)-(iii) authorizes a court to limit otherwise permissible discovery where, among other things, the discovery sought is unreasonably cumulative.") (quotation marks omitted).

CLF contends that the defendants must comply with its requests because they did not serve a timely, specific, and evidentiarily-supported proportionality objection (Reply, ECF No. 72, at 8-

6

10), but the Court disagrees. Even if the defendants' objections were untimely,[1] it is within the Court's discretion "to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014)). And as noted above, while an affidavit is ordinarily required to support the "burden and expense" component of a proportionality objection, the Court may excuse its absence when the requests are overly broad or unduly burdensome on their face. *In re Kidd*, 2020 WL 5594122, at *11. In this case, the Court does not need an affidavit to know that, in asking for substantially all information and documents related to the defendants' vehicles, real estate, operations, employee job responsibilities, and environmental compliance efforts (*see* ECF Nos. 64-5, 63-6), CLF has requested production of a significant percentage of all the documents the defendants created over the past seven years. *Cf. id.* (excusing the lack of an affidavit, and denying discovery on grounds of facial overbreadth, where requests "swe[pt] in . . . all manner of organizational documents").

With respect to the third class of documents, the Court agrees with the defendants that they lack relevance to the case as it is currently postured. When it filed this suit, CLF evidently believed that Student Transportation of America, LLC ("STA LLC") was All-Star's parent. It has since learned that All-Star is a subsidiary of a different entity, Student Transportation of America, Inc. ("STA Inc."). CLF thus sought leave to amend its complaint to drop STA LLC and add STA Inc. as parties. (Mot. for Leave to File Am. Compl., ECF No. 53.) The Court granted leave to amend to drop STA LLC, but denied leave to amend to add STA Inc. (Ruling on Pl.'s Mot. for Leave to File Am. Compl., ECF No. 78, at 12.) Thus, neither STA LLC nor STA Inc. are currently parties

---

[1] The defendants did object on lack-of-proportionality grounds within thirty days of receiving CLF's requests (*see* ECF No. 63-5, at 3 and ECF No. 63-6), although in a form that did not comply with Rules 33(b)(4) and 33(b)(2)(C).

to the case. CLF has not met its burden to show the relevance of an inquiry into All-Star's relationship with its corporate parent.

### 3. Conclusion

For the foregoing reasons, CLF's motion for an order compelling compliance with its sixteen interrogatories and twenty-five RFPs is denied. Yet because the Court has concluded that an inquiry into the frequency and regularity of excessive idling would be relevant to the standing analysis, this denial is without prejudice to revised discovery requests that are much more narrowly tailored to identifying additional instances of such idling. The parties are directed to meet and confer in a good faith effort to agree upon more targeted requests, and to file a joint status report no later than November 23, 2022, stating whether they have been able to reach an agreement.

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 11th day of November, 2022, at Hartford, Connecticut.

                                                */s/ Thomas O. Farrish*
                                                Hon. Thomas O. Farrish
                                                United States Magistrate Judge