UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br>　　Plaintiff,<br><br>v.<br><br>ALL-STAR TRANSPORTATION, LLC,<br>　　Defendant. | No. 3:21-cv-201 (SRU) |

### RULING ON MOTION TO DISMISS

　　This ruling addresses challenges to the Court's jurisdiction to hear a Clean Air Act citizen suit against a transportation company. Conservation Law Foundation ("CLF") sued All-Star Transportation, LLC ("All-Star") for allegedly engaging in a pattern and practice of illegal bus idling. All-Star moved to dismiss on Article III standing grounds.

　　For the following reasons, I conclude the Court has subject matter jurisdiction over the action and **deny** All-Star's motion to dismiss, **doc. no. 127**.

### I. Standard of Review

　　"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits[.]" *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

　　The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists "by a preponderance of the evidence[,]" *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019)

(quoting *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016)), whether or not "jurisdictional facts are placed in dispute." *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). When a defendant proffers "material and controverted" evidence in a fact-based Rule 12(b)(1) motion revealing "factual problems" in subject matter jurisdiction, the plaintiff must likewise proffer evidence supporting jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). "However, the plaintiff[] [is] entitled to rely on the allegations in the [p]leading[s] if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.*

District courts make findings of fact about standing when faced with "material and controverted" factual disputes. *Id.* The court of appeals reviews findings of disputed facts for clear error, and reviews conclusions of law and findings based on undisputed facts de novo. *Id.*

## II. Background

CLF is a nonprofit "organization dedicated to protecting New England's environment." Am. Compl., Doc. No. 82 ¶ 25. All-Star "is a school bus company providing transportation services for public schools throughout Connecticut." Mot. to Dismiss, Doc. No. 128 at 7. All-Star has bus terminals in Waterbury, Seymour, Brookfield, and New Milford. Am. Compl., Doc. No. 82 ¶ 5.

CLF sued All-Star for alleged violations of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, and Connecticut's state implementation plan ("SIP") limits. Each SIP must, *inter alia*, "include enforceable emission limitations." *Id.* § 7410(a)(2)(A). Citizens may bring civil actions to enforce SIP emission limitations. *Id.* § 7604(a)(1). Connecticut's SIP prohibits automobile idling for longer than three minutes. Conn. Agencies Regs. § 22a-174-18(b)(3)(C).

CLF alleges All-Star engaged in a pattern and practice of unlawful bus idling for more than three minutes at its four bus terminals.  Am. Compl., Doc. No. 82 ¶¶ 106, 111, 116, 122, 133-34.

Specifically, CLF alleges the following.  CLF investigators observed 83 Connecticut SIP idling violations in each All-Star bus terminal from October 2019 to February 2021.  *Id.* ¶ 133.  An investigator from the Environmental Protection Agency ("EPA") observed 76 idling violations over a two-day period in October 2022.  Doc. No. 102-1.  All-Star employees admit to excessive idling, or observing excessive idling, in deposition testimony.  *See, e.g.*, Doc. No. 132-9 at 5-7; Doc. No, 132-12 at 10.  "Zonar" bus-monitoring technology indicates that All-Star's buses engaged in over 91,000 idling violations from July 1, 2020 to December 31, 2022.  Doc. No. 132-7 ¶ 17; *see also* Doc. No. 132-6 (referencing the Zonar data set of 91,305 instances an All-Star bus idled for over three minutes).

CLF alleges its members "live, rent, own property, study, attend school, use transit, and/or spend time shopping, recreating, and conducting activities near the lots" where All-Star's buses routinely idled for over three minutes.  Am. Compl., Doc. No. 82 ¶ 136.  Its members allegedly inhaled exhaust pollutants from All-Star buses.  *Id.* ¶ 138.  As a result, the CLF members are concerned about their health and have experienced respiratory symptoms.  *Id.* ¶¶ 141, 143.  CLF sues All-Star for civil penalties, injunctive relief, and costs.  *Id.* at 24-25.

After All-Star and CLF conducted jurisdictional discovery, *e.g.*, doc. no. 100, All-Star moved to dismiss the amended complaint for lack of subject matter jurisdiction.  MTD, Doc. No. 127.  I held oral argument on December 18, 2023, and took the motion under advisement.  Min. Entry, Doc. No. 147.

### III. Discussion

All-Star brings a fact-based Rule 12(b)(1) motion supported by deposition testimony, affidavits, and an expert report. *See generally* Docs. No. 127-128, 140. CLF likewise opposed the motion with deposition testimony, affidavits, and a competing expert report. *See generally* Doc. No. 132. The parties focused their jurisdictional discovery on four CLF members who live in Connecticut: Erin Davies, Ted Heavenrich, Aaron Goode, and Karen Schnitzer. Pl.'s Opp., Doc. No. 134 at 11-12. Upon review of the evidence, I conclude that there are no "material and controverted" factual disputes with regards to subject matter jurisdiction. Instead, All-Star and CLF dispute the legal conclusions I must draw from their proffered jurisdictional evidence. *Carter*, 822 F.3d at 57. Accordingly, I do not make findings of fact.

### A. Article III Standing

To satisfy Article III's constitutional minimum of standing,

> the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is [] concrete and particularized[] and [] actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

An organization may invoke associational standing on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

4

"The party invoking federal jurisdiction bears the burden of establishing [the standing] elements." *Lujan*, 504 U.S. at 561.  As litigation progresses, each standing element must be supported in accordance with the burden of proof required at each stage of the case.  *Id.*  With Rule 12(b)(1) motions to dismiss, a district court typically assumes that uncontroverted assertions in the complaint as true "and draw[s] all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon*, 752 F.3d at 243.

1. *Injury-in-fact*

CLF alleges four injuries-in-fact:  "1) exposure to higher levels of air pollutants of the type All-Star emits; 2) adverse physical reactions to such air pollutants; 3) reasonable concern about health because of such air pollutants; and 4) less enjoyment and change in activities based on the reasonable concern."  Doc. No. 134 at 15.  CLF submitted affidavits and deposition testimony of its members in support of those allegations.  Docs. No. 132-1–132-5.

I take each alleged injury in turn.  The first and second injuries—air pollutant exposure and adverse physical reactions to those pollutants—are recognized injuries-in-fact.  "[W]ell-documented dangers associated with automobile emissions lead us to conclude that the Environmental [organizational member] Petitioners here have suffered an injury-in-fact."  *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018); *see also New York Pub. Int. Rsch. Grp. v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003) ("We are persuaded that NYPIRG's members' allegations about the health effects of air pollution . . . are sufficient to establish injury-in-fact[.] . . .").

Third, health concerns stemming from air pollutants and "uncertainty" regarding whether unlawful "actions expose [plaintiffs] to excess air pollution are sufficient to establish injury-in-fact[.]" *Id.*  Fourth, "environmental plaintiffs adequately allege injury in fact when they aver

5

they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id.* (quoting *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000)).

In environmental cases, "[t]he injury-in-fact necessary for standing 'need not be large, an identifiable trifle will suffice.'" *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (quoting *Sierra Club v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 557 (5th Cir. 1996)). "Given this low threshold requirement," *Sierra Club*, 73 F.3d at 557, I conclude CLF's alleged injuries are sufficiently concrete and particularized.

2. *Traceability*

CLF argues that a plaintiff's geographical vicinity to the polluted area is sufficient to demonstrate that its injuries are fairly traceable to All-Star's bus idling. "As the caselaw recognizes, it is well-settled that [f]or standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; *substantial likelihood of the alleged causality* meets the test. This is true even in cases where the injury hinges on the reactions of the third parties . . . ." *Nat. Res. Def. Council*, 894 F.3d at 104 (citing *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113 (D.C. Cir. 1990)) (emphasis added).

The Second Circuit focuses traceability in air pollution cases on geographic proximity to the pollution source. Individuals who "live[d] in polluted areas and along roadways," *id.*, lived and worked "a few blocks away," from the alleged polluter, *LaFleur*, 300 F.3d at 270, or "reside[d] within a few miles of" the alleged polluter had standing to sue. *New York Pub. Int. Rsch. Grp.*, 321 F.3d at 325. CLF's members regularly visit locations that are 0.3, 0.6, 1.7, 1.36, 0.8, 0.3, 0.5, 5.4, 2.6, 2.2, and 7.59 miles away from All-Star's bus terminals. Doc. No. 134 at 32-33 (citing deposition testimony and sworn member declarations); *see also id.* at 23-24 (same).

CLF members operate sufficiently close to the pollution sources to satisfy traceability under established case law.

During oral argument on the motion to dismiss, All-Star claimed that I must find standing exists for each individual alleged SIP violation.  *See* Hr'g Tr., Doc. No. 148 at 57:10-13, 61:24-62:01.  I disagree with All-Star's proposed approach "because it conflates the issue of standing with the issue of actual liability."  *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 793 (5th Cir. 2000) (rejecting the defendant's redressability argument that each alleged injury must be "linked to the exact dates where violations of regulatory standards are known to have occurred" and that the plaintiff must "connect the exact time of their injuries with the exact time of an alleged violation").

Both parties additionally submitted expert reports to support and challenge traceability.  Docs. No. 109-12, 132-8.  Expert reports, however, are unnecessary at this stage of litigation.  The "argument that a polluter who contributes to pollution does not [satisfy] causation . . . is an issue best left to the rigors of evidentiary proof at a future stage of the proceedings, rather than dispensed with as a threshold question of constitutional standing."  *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 347 (2d Cir. 2009), *rev'd on other grounds sub nom. Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011) (internal quotation marks omitted).

CLF has therefore met its burden of demonstrating traceability.

3.  *Redressability*

CLF seeks civil penalties and injunctive relief.  Am. Compl., Doc. No. 82 at 24.  Civil financial penalties, intended to induce compliance with air emission requirements, satisfy redressability.  *Nat. Res. Def. Council*, 894 F.3d at 104.  "The notion that financial incentives deter environmental misconduct is hardly novel."  *Id.* (quoting *In re Idaho Conservation League*,

7

811 F.3d 502, 510 (D.C. Cir. 2016)) *(*cleaned up).  Injunctive relief against All-Star would likewise redress CLF's alleged injuries stemming from air pollution.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010) (holding that the respondents had standing to seek "injunctive relief in order to avert the risk of gene flow to their crops—the very same effect that the District Court determined to be a significant environmental concern").

CLF therefore has standing to bring this action.

## IV.  Conclusion

For the reasons set forth above, I **deny** All-Star's Motion to Dismiss, **doc. no. 127**.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of May 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
